**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | |
|---|---|
| RYAN. W., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 1:25-CV-150-JSD |
| | ) |
| FRANK BISIGNANO, | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying the application of Ryan W. ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI. For the reasons stated herein, the Court affirms the Social Security Administration's denial of Plaintiff's claim for DIB and SSI.[1]

### I.      Background

Plaintiff protectively filed for DIB and SSI on June 12, 2023. (Plaintiff's Statement of Material Facts ("PSUMF"), ECF No. 15, ¶ 2) Plaintiff's request was denied, upon reconsideration, on January 17, 2024. (PSUMF, ¶ 4) A telephone hearing before an ALJ was held on September 19, 2024 (PSUMF, ¶ 15), and the ALJ issued an unfavorable decision on October 25, 2024. (PSUMF, ¶ 32) The ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 8, 2023, the alleged onset date. (PSUMF, ¶ 33) The ALJ found that Plaintiff had the following severe impairments: degenerative disk disease of lumbar

---

[1] Notably, this case is fully briefed but that Plaintiff did not file a reply memorandum in support of his Social Security brief and the time for filing a reply has run. *See* ECF No. 4.

spine, obesity, psoriatic arthritis, type 2 diabetes mellitus, left knee osteoarthritis, osteoarthritis of bilateral feet; and osteoarthritis of the right hip. (PSUMF, ¶ 34) The ALJ, however, found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (PSUMF, ¶ 35) The ALJ determined Plaintiff had the following residual functional capacity ("RFC") to perform sedentary work:

> except the claimant can lift up to 10 pounds occasionally. The claimant can stand and/or walk for about 2 hours and sit for up to 6 hours in an 8- hour workday, with normal breaks. The claimant can occasionally climb stairs or ramps, but never climb ladders, ropes or scaffolds. The claimant can occasionally balance, kneel, stoop, and crawl. The claimant can frequently handle objects using the bilateral upper extremities. The claimant must avoid frequent exposure to extreme cold and excessive vibration. The claimant must avoid occasional exposure to operational control of moving machinery. The claimant must avoid unprotected heights and exposure to hazardous machinery.

(PSUMF, ¶ 36) The ALJ determined that Plaintiff could not perform his past work. (PSUMF, ¶ 37) However, the ALJ found that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform. (PSUMF, ¶ 39)

Plaintiff filed a Request for Review of Hearing Decision/Order with the Appeals Council on December 6, 2024, which was denied on July 11, 2025. (PSUMF, ¶¶ 40-41) Plaintiff has exhausted all his administrative remedies and this case is ripe for review. *See* 42 U.S.C. § 405(g). As to Plaintiff's testimony, work history, and medical records, the Court accepts the facts as provided by the parties.

## II. Legal Standard

The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

2

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's RFC to perform past relevant work. 20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under

3

the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v).

### III.    Discussion

#### A.  Credibility

The ALJ found at Step Two that Plaintiff had the following severe impairments: degenerative disk disease of the lumbar spine; obesity; psoriatic arthritis; Type 2 diabetes mellitus; left knee osteoarthritis; osteoarthritis of the bilateral feet; and osteoarthritis of the right hip. (PSUMF, ¶ 34). The ALJ, however, found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the hearing] decision." (Tr. 25, ¶ 1) When evaluating credibility, the ALJ here found that:

> The claimant's alleged disabling impairments are not supported by objective medical findings and history of medical treatment. While the claimant does experience some limitations as a result of his impairments, the record evidence fails to indicate that his limitations are totally work preclusive, or greater than provided in the residual functional capacity adopted. The claimant alleges he has physical impairments that prevent him from performing basic work-related activities (Ex. 4E/1; Hearing Testimony). However, the claimant described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The claimant stated that he drove a car, which would be inconsistent with his previous statements that he had difficulty with squatting, bending, standing, reaching, sitting, and using hands (Ex. 4E/8). The ability to drive a car demonstrates the ability to sit, bend, stand, reach, and use his hands. All of these inconsistencies call into question the claimant's subjective statements regarding the intensity, persistence, or functionally limiting effects of pain and symptoms.

(Tr. 25)

Plaintiff asserts that the ALJ's credibility assessment is not supported by substantial evidence. (ECF No. 14 at 5) Plaintiff argues that the ALJ summarized the evidence without articulating the specific reasons for the weight given to each of Plaintiff's symptoms. *Id*.

4

Further, Plaintiff contends that the objective and other evidence supported his disabling impairments. (ECF No. 14 at 5) Plaintiff points out that the disabling impairment of psoriatic arthritis was evidenced by lab tests showing inflammation: c-reactive protein (CRP) was elevated at 37, with a reference range of 0-1021; and sedimentation rate was elevated at 21, with a reference range of 0-15. (ECF No. 174 at 5-6) However, the ALJ did not mention Plaintiff's CRP and sedimentation rates in the hearing decision. *Id*.

Plaintiff notes objective evidence that he claims supports greater restrictions. Specifically, on July 21, 2023, bilateral x-rays of Plaintiff's hips revealed that he suffered from decreased femoral head neck offset and acetabular impingement. (Tr. 351) On August 25, September 22, and October 23, 2023, Nurse Practitioner Jessica Nichols observed that Plaintiff walked with a limp. (Tr. 375, 367, 390, 386) Plaintiff asserts that this objective evidence supports his reports that he had difficulty standing and sitting for long periods and that he needed to change positions or rest due to hip impingement and pain and stiffness from psoriatic arthritis. (ECF No. 14 at 8) Plaintiff asserts it was erroneous for the ALJ to find that Plaintiff had limited ambulation with a limp and normal gait and station, in contradiction to the more severe limitations indicated by the objective evidence. (ECF No. 14 at 8 (citing Tr. 260))

Similarly, Plaintiff refers to rheumatologist Mehwish Bilal, M.D.'s examinations of Plaintiff on July 21, 2023, August 24, 2023, and November 17, 2023, detailing his edema, mild swelling of the fingers and deformities around the DIP and PIP hand joints. In addition, Plaintiff notes his July 21, 2024, x-rays showed a deformity of the fifth metacarpal bone and adjacent soft tissue swelling of the right hand. (Tr. 352) Plaintiff asserts that these objective labs and clinical findings support his allegation that he cannot frequently handle objects due to swelling, deformities, and pain in his hands and fingers. (ECF No. 14 at 6) Plaintiff states that the ALJ did

5

not support the finding that Plaintiff can frequently handle objects, as opposed to being able to occasionally handle objects. Further, Plaintiff states that this difference is dispositive because the vocational expert testified that Plaintiff could not maintain light or sedentary work if he is limited to occasional handling. (ECF No. 14 at 6)

Moreover, Plaintiff argues that the ALJ improperly considered and relied upon Nurse Practitioner Marshall Trawick's recommendation that Plaintiff not have surgery. (ECF No. 14 at 7) According to the treatment notes, Nurse Trawick diagnosed Plaintiff with lumbar spondylosis with lumbar facet arthropathy. *Id*. Nurse Trawick also indicated that Plaintiff suffered from rheumatoid arthritis, which was later discerned to be psoriatic arthritis. *Id*. Plaintiff contends that the ALJ's emphasis on Nurse Trawick's recommendation that Plaintiff not have surgery is misplaced since surgery is "never indicated" to treat psoriatic arthritis, and the ALJ did not explain that Nurse Trawick attributed Plaintiff's symptoms to arthropathy and an autoimmune disorder. *Id*. at 7, 9.

Also, Plaintiff points out that the ALJ did not address the use of methotrexate to treat his psoriatic arthritis. *Id*. Plaintiff references the NIH website, which provides that methotrexate is used for patients with "moderate-to-high disease activity." (ECF No. 14 at 9 (citing https://www.ncbi.nlm.nih.gov/books/NBK556114/)) According to Plaintiff, the ALJ did not reference Plaintiff's use of methotrexate because then "the ALJ would have been compelled to provide further analysis to explain how [Ryan W.'s] alleged disabling symptoms are not consistent with moderate-to-severe disease activity." (ECF No. 14 at 9)[2]

---

[2] Plaintiff admits that Dr. Bilal prescribed him methotrexate "to treat psoriatic arthritis and pain." (PSUMF, ¶ 56) Notably, psoriatic arthritis is a chronic autoimmune condition that causes joint pain. https://www.mayoclinic.org/diseases-conditions/psoriatic-arthritis/symptoms-causes/syc-20354076 (last visited 6/16/2026)

Plaintiff further cites that the ALJ acknowledged in his opinion that Plaintiff drove a car and that said fact "would be inconsistent with his previous statements that he had difficulty with squatting, bending, standing, reaching, sitting, and using hands." (Tr. 25) More to it, Plaintiff references the ALJ's statement that "[t]he ability to drive a car demonstrates the ability to sit, bend, stand, reach, and use his hands. All of these inconsistencies call into question the claimant's subjective statements regarding the intensity, persistence, or functionally limiting effects of pain and symptoms." (Tr. 25) Plaintiff, however, responds that his very occasional driving of a car does not demonstrate that he can maintain competitive work. (ECF No. 14 at 10) Rather, Plaintiff testified that he does not drive for long periods of time because he can not sit for very long. (Tr. 14 at 10) Plaintiff stated that he does not go shopping or socialize, and doctor appointments are the farthest locations he will drive. *Id*. Plaintiff notes that this testimony is consistent with his previous statements that he has "difficulty with squatting, bending, standing, reaching, sitting, and using hands." *Id*. Contrary to the ALJ's assertions, Plaintiff contends that he had difficulty performing these tasks, not that he was unable to perform them. *Id*. In any event, Plaintiff states that the ALJ failed to address these inconsistencies and thus performed a faulty credibility analysis, which led to an unsupported RFC assessment. *Id*.

Subjective complaints can be discounted where inconsistencies appear in the record as a whole. *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984). In *Polaski,* the Eighth Circuit held the ALJ must consider "the claimant's prior work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions." *Medhaug v. Astrue,* 578 F.3d 805, 816 (8th Cir. 2009) (citing *Polaski,* 739 F.2d at 1322). Another factor to be considered is the absence of objective medical evidence to support the complaints, although the ALJ may not

discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence. *Mouser v. Astrue,* 545 F.3d 634, 638 (8th Cir.2008). The ALJ is not required to discuss each *Polaski* factor as long as "he acknowledges and considers the factors before discounting a claimant's subjective complaints." *Moore v. Astrue,* 572 F.3d 520, 524 (8th Cir.2009) (citing *Goff,* 421 F.3d at 791); *Halverson v. Astrue*, 600 F.3d 922, 931–32 (8th Cir. 2010). "Even if [the court] would have weighed the evidence differently, [the court] must affirm the denial of benefits if there is enough evidence to support the other side." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).

Here, the ALJ found that Plaintiff's "history of medical treatment" did not support his credibility. (Tr. 25) The ALJ considered Plaintiff's daily activities and found they were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (Tr. 25) Relatedly, the Eighth Circuit has "held that acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009). Moreover, "acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain." *Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir. 2009). In this case, because the record contains several inconsistencies as to Plaintiff's disability, the ALJ did not err. *Heino,* 578 F.3d at 881. The ALJ accepted Plaintiff's allegations to the extent that they were credible and accommodated them. The ALJ emphasized that Plaintiff could drive a car, which he determined was "inconsistent with [Plaintiff's] previous statements that he had difficulty with squatting, bending, standing, reaching, sitting, and using hands." (Tr. 25)

Further, the ALJ did not completely discount Plaintiff's allegations as to his symptoms and limitations, as they were accounted for in the ALJ's RFC limitation to sedentary work. (Tr.

24)    Nevertheless, the overall medical records do not support any additional limitations. Objective medical findings and observations noted that Plaintiff had full range of motion and no swelling or deformity in his back, despite tenderness to palpitation. (Tr. 25, 323, 328) His MRI revealed only mild abnormalities. (Tr. 25, 307). He had no loss of strength in his right ankle with resisted dorsiflexion and plantarflexion. (Tr. 25, 324) His left foot x-rays showed no acute fracture or dislocation and only mild degenerative changes. (Tr. 26, 311) Plaintiff had only mild osteoarthritis of the hips (Tr. 26, 351), normal gate and station, normal motor strength, and normal movement in all extremities despite presenting with the limp. (Tr. 26, 367, 386-87) Finally, Plaintiff's feet had a normal range of motion and strength, despite some tenderness. (Tr. 26, 394) Thus, the Court concludes that the ALJ considered the objective medical evidence and findings when evaluating Plaintiff's subjective complaints.

Likewise, the ALJ considered Plaintiff's obesity and its effect on his physical condition when fashioning the RFC. (Tr. 26, 322) The ALJ noted that Plaintiff's body mass index (BMI was in the 35.0-39.9 range, which was obese and a severe impairment. Thus, the Court finds that the ALJ took Plaintiff's obesity into account in his evaluation. *See Heino*, 578 F.3d at 881 (citing *Brown ex rel. Williams v. Barnhart*, 388 F.3d 1150, 1153 (8th Cir.2004) ("We have held that when an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal.").

In addition, the ALJ considered the conservative nature and relative effectiveness of Plaintiff's treatment, or lack thereof based upon Plaintiff's compliance. (Tr. 25-27) At times, Plaintiff declined pain management regimen. (Tr. 25, 321, 466) Similarly, Plaintiff's providers frequently recommended conservative treatment, not indicative of debilitating conditions. For example, his treaters recommended medication, pain management, corrective orthotics and

9

supporting tennis shoes, as well as a healthy diet. (Tr. 25-26, 321-22, 342, 368, 395, 529-30, 534, 562-62). *See Kribble v. Kijakazi*, 663 F. Supp. 3d 1016, 1029 (E.D. Mo. 2023) (citing *Buford v. Colvin*, 824 F.3d 793, 796-797 (8th Cir. 2016) ("A conservative course of treatment constitutes substantial evidence supporting a less limiting RFC."). Indeed, a conservative course of treatment may constitute the "most persuasive medical reason" an ALJ offers in support of her findings as to the plaintiff's RFC. *Pierce v. Kijakazi*, 22 F.4th 769, 773 (8th Cir. 2022). Thus, Plaintiff's treatments with medications and diet, instead of invasive surgeries, provides persuasive evidence in support of the less limiting RFC. *Kribble*, 663 F. Supp. 3d at 1029.

The Court bears in mind that it is not its "role to reweigh the medical evidence of plaintiff's limitations considered by the ALJ in [the] determination of plaintiff's RFC." *Dotson v. Saul*, No. 4:20 CV 310 RWS, 2021 WL 2529786, at *5 (E.D. Mo. June 21, 2021) (citing *Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016)). Rather, it is the ALJ's duty to weigh conflicting evidence and to resolve disagreements among medical opinions. *Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014). The ALJ is not required to mechanically list and reject every possible limitation. *McCoy v. Astrue,* 648 F.3d 605, 615 (8th Cir.2011). Further, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Wildman v. Astrue,* 596 F.3d 959, 966 (8th Cir.2010) (quoting *Black v. Apfel,* 143 F.3d 383, 386 (8th Cir.1998)). The RFC must only include those impairments that are substantially supported by the record as a whole. *Goose v. Apfel,* 238 F.3d 981, 985 (8th Cir.2001); *see also Forte v. Barnhart,* 377 F.3d 892, 897 (8th Cir.2004).

The Court finds that the ALJ fashioned the RFC to address Plaintiff's subjective complaints to the extent that they were supported in the record. Plaintiff, who bears the burden of proving his RFC, has not proven additional limitations. *See Eichelberger v. Barnhart*, 390 F.3d

10

584, 591 (8th Cir.2004). Thus, the Court finds that the RFC was based upon substantial evidence and affirms the decision of the Commissioner.

**IV.        Conclusion**

Based on the foregoing, the Court finds that the ALJ's decision was based on substantial evidence in the record as a whole and should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **AFFIRMED**.  A separate Judgment will accompany this Order.

_____

JOSEPH S. DUEKER
UNITED STATES MAGISTRATE JUDGE

Dated this 3rd day of August, 2026.